STATE (Albert Sanford, complainant,) *v.* ALFRED W. FISKE.

An act of the General Assembly, passed in June, 1854, entitled,"An act to authorize the city of Providence to regulate hackney coaches and other vehicles," which provides, in substance, that the city council of the city of Providence shall have power to adopt such rules and orders as to them shall seem necessary and expedient for the regulation of all omnibuses, stages, hackney coaches, wagons, carts, chaises and all other carriages and vehicles used and employed wholly or in part in said city ; such rules to be published in some newspaper in said city, for at least one week, daily, before going into effect, gives the council power only to make rules and orders for the due regulation of the vehicles therein designated. It does not authorize them to grant licenses, in their discretion, to such persons, and on such terms as they shall see fit, but only to prescribe, by general rules and orders, the terms on which any person may enjoy the privilege of using such vehicles.

The General Assembly, by said act. grants certain powers to the city council of the city of Providence. The council must exercise these powers itself, and cannot delegate the exercise of them to the mayor and board of aldermen. Discretionary powers which are granted to one person or body, cannot by that person or body, without leave, be delegated to another.

Hence, an ordinance of the city council of the city of Providence, establishing a system of licenses for certain classes of vehicles, and prohibiting their use unless licensed as aforesaid, and providing that the mayor and board of aldermen, may, from time to time, grant licenses to such persons, and upon such terms, as they may deem expedient for vehicles requiring licenses, and that they may *revoke* such licenses at their discretion,—is void for want of authority in the city council to pass such an ordinance.

DURFEE, J. The petitioner has been adjudged guilty on a complaint preferred against him under an ordinance passed by the city council of the city of Providence, the charge being that he " did use a certain wagon and vehicle, used within the limits of said city for the conveyance of goods, wares and merchandise, articles and things within said city, said wagon and vehicle not being duly licensed." The petitioner contends that the judgment against him is erroneous for want of authority in the city council to pass the ordinance. For the city, it is contended that authority to pass the ordinance is conferred by " An act to authorize the city of Providence to regulate hackney coaches and other vehicles," enacted in June, 1864. The act provides that the city council of the city of Providence shall have power,

from time to time, to make such rules and orders as to them shall appear necessary and expedient for the due regulation, in said city, of omnibuses, stages, hackney coaches, wagons, carts, chaises, and all other carriages and vehicles whatsoever, used or employed wholly or in part in said city, whether by prescribing their route and places of standing, or in any other manner whatsoever, and whether such carriages and other vehicles as aforesaid are used for burden or pleasure, or for the conveyance of passengers or freight or otherwise, and whether with or without horse or other animal power.

The act contains a proviso that no such rule or order shall take effect or go into operation, until the same shall have been published daily for at least one week in some newspaper printed in said city. Under this act, the city council of the city of Providence have passed an ordinance making certain rules and orders, and also establishing a system of licenses for the regulation of certain classes of vehicles used in the city, and prohibiting their use unless licensed as provided. The ordinance prescribes a license fee of one dollar, and provides that the mayor and aldermen may, from time to time, grant licenses to such persons and upon such terms as they may deem expedient for vehicles requiring licenses, and that they may revoke such licenses at their pleasure.

The ordinance was, by its terms, to go into effect in November, 1854, and we presume, therefore, that the system of licenses which it establishes has been in force for nearly fourteen years. This is a fact that speaks well for the system as a practical measure, and which challenges for it, even upon the question of its legality, our careful consideration ; but we are not at liberty, however, to infer that such a system was authorized by the act of 1854, unless the language of the act clearly warrants the inference. " It is," said Justice Nelson, in delivering the opinion of the Supreme Court of the United States in *Minturn* v. *Larne*, 23 Howard, 435, " a well settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of

the act, or derived therefrom by necessary implication, regard being had to the objects of the grant. Any ambiguity or doubt arising out of the terms used by the legislature, must be resolved in favor of the public."

, Did the act of 1854 authorize the establishment of such a system of licenses as is ordained by the city ordinance? We think not. It gave the city council power, not to grant licenses, but to make rules and orders for the due regulation of the vehicles therein designated; and no rule or order thus made was to go into effect, until published daily for at least one week in some newspaper printed in the city. We think the design of the act was, that these rules and regulations should constitute a code which, being published as prescribed, could be known and obeyed by all who would be subject to its directions; and that if the act admits of directions for particular vehicles, it admits of them only by rules and orders published as prescribed. We find nothing in the act which leads us to think it was designed to authorize the city council to require any person to procure a license, and pay a license fee fixed at their discretion, for the privilege of using his own carriage or vehicle of any kind within the city. Still less do we find anything in the act which leads us to think it was designed to authorize the city council to grant this privilege to one person and refuse it to another, as they might deem expedient, or to prescribe the terms on which the privilege should be enjoyed, except by rules and orders to be published as prescribed, or to revoke the privilege at their discretion. And even if we could find in the general language of the act a grant of such large discretionary powers to the city council, the powers, being granted to the city council, could only be exercised by them. The rule is well settled, that discretionary powers which are granted to one person or body, cannot, by that person or body, without leave, be delegated to another. By the ordinance under consideration, it is not the city council, but the mayor and aldermen, who are declared to have the power to grant licenses to such persons and upon such terms as they may deem expedient, and to revoke the same at their discretion. By the ordinance, the license fee is fixed at

one dollar, but if such a change is authorized by the act of 1854, the city council is left to fix it at that or any higher price, according to their discretion. Is it probable, if the legislature had intended to authorize such a change, that it would not have limited its amount?

By the ordinance, also, licenses are for only certain classes of vehicles; but if such licenses are authorized at all by the act of 1854, there are no words in the act which expressly prevent their requirement for all vehicles indiscriminately, which are used, either wholly or in part, in the city of Providence. Is it probable, if the legislature had intended to authorize such licenses, that it would not have expressly limited the application of them to vehicles of some certain kinds or descriptions.

An act was passed by the General Assembly in 1865 which deserves consideration in connection with the question before us. It provides that "the city councils of the cities of Providence and Newport respectively, shall have the power to regulate the setting up, keeping and employing wholly or in part, in either of said cities respectively, of omnibuses, stages, hackney coaches, wagons, carts, and all other carriages or vehicles whatsoever used for the conveyance, *for hire*, of passengers, or of any description of freight, by granting licenses therefor upon such fees or compensation for the benefit of said cities respectively as they shall see fit, or by refusing to grant the same," with a proviso that the license fee shall not exceed five dollars in the case of a domiciled inhabitant or a tax payer, and one hundred dollars in the case of any other person. In this act the power to license is expressly granted, but it is also expressly restricted to vehicles used for the conveyance for hire of passengers and freight, and coupled with a proviso limiting the license fees.

The fact that the legislature was so careful to make these restrictions when it expressly granted the power to license, furnishes an argument that it could not have intended to grant the power without such restrictions under the general language of the act of 1854.

In 1856, an act was passed for the city of Newport, which,

except as varied to make it appropriate to Newport, is the same as the act passed in 1854 for the city of Providence. If the legislature had supposed it had granted a power to license by the acts of 1854 and 1856, it is hardly probable that it would have repealed the grant with the restrictions in 1865, without any allusion to the acts of 1854 and 1856.

We have been referred to the new charter of the city of Providence, passed in January, 1866, being chapter 598 of the Statutes. This gives the city council power to make laws, ordinances and regulations for the government of the city, relative (among other things) to hackney carriages, trucks, carts, and other vehicles, and licensing and regulating the same." But we do not think the licensing provisions of the ordinance of 1854, if void when passed, can become valid without ratification or renewal by reason of any powers conferred on the city council in 1866, even if the charter grants the power which is claimed. Neither do we think the clause of the new charter, which continues in force all ordinances theretofore passed and then in force, until they should expire by limitation or be repealed, would give legal effect to the provisions of an ordinance which, being unauthorized, were not legally in force when the new charter was passed.

For the reasons which we have expressed, we think the judgment against the petitioner was erroneous and must be reversed.

*Judgment reversed.*

*Parkhurst, for complainant.*

*Van Slyck, for respondent.*